## WORDEN v. CALIFORNIA FIG SYRUP COMPANY.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 36. Argued March 18, 19, 1902.—Decided January 5, 1903.

When the owner of a trade mark applies for an injunction to restrain the defendant from injuring his property by making false representations to the public it is essential that the plaintiff should not in his trade mark or in his advertisements and business, be himself guilty of any false or misleading representation, and if he makes any material false statement .

in connection with the property which he seeks to protect, he loses his right to claim the assistance of a court of equity; and where any symbol or label claimed as a trade mark is so constructed or worded as to make or contain a distinct material assertion which is false, no property can be claimed on it, or, in other words, the right to the exclusive use of it cannot be maintained.

On June 1, 1897, the California Fig Syrup Company, created under the laws of the State of Nevada, and having its principal place of business in San Francisco, California, filed a bill in equity in the Circuit Court of the United States for the Northern District of California, against Clinton E. Worden & Company, a corporation of the State of California, and against J. A. Bright, T. F. Bacon, C. J. Schmelz and Lucius Little, citizens of the State of California.

The bill alleged that, in the year 1879, one Richard E. Queen invented "a certain medical preparation or remedy for constipation and to act upon the kidneys, liver, stomach and bowels, which medical compound is a combination in solution of plants known to be beneficial to the human system, forming an agreeable and effective laxative to cure habitual constipation and many ills, depending upon a weak and inactive condition of the liver, kidneys, stomach and bowels;" that shortly after the said invention the said Queen sold and transferred all his right, title and interest in and to said medical compound, and in and to the trade name, trade marks and good will of said company to the complainant company, which has ever since been engaged in the manufacture and sale of said medical preparation or remedy; that said medical preparation has always been marked, named and called by the complainant "Syrup of Figs," that name being printed or otherwise marked upon every bottle, and also printed upon the boxes, packages or wrappers in which the bottles of the preparation were packed for shipment and sale; that the complainant and its said predecessor in interest were the first to pack and dress or mark a liquid laxative preparation in the manner illustrated by Exhibits "A" and "B" attached to the bill—that is to say, in an oblong, rectangular box or carton, with statements of the virtues of the preparation printed in different languages upon the back and sides of the

carton, and on the border within which, at the top, is a representation of a branch of a fig tree, bearing fruit and leaves, surrounded by the words "Fig Syrup Company," or "California Fig Syrup Company," and below which appear, in large letters, the words "Syrup of Figs," and below these last-named words appears a brief statement of the virtues of this preparation, together with the words "Manufactured only by the California Fig Syrup Company;" that the complainant has spent more than one million dollars in advertising said preparation, always under the name of "Syrup of Figs," or "Fig Syrup," throughout the United States and other countries, and that millions of bottles of said preparation have been sold; that, by virtue of the premises, the complainant has acquired the exclusive right to the name, "Syrup of Figs," or "Fig Syrup," as it is indifferently called by the public, or any colorable imitation of the same, as applied to a liquid laxative medical preparation irrespective of the form of bottle or package in which it may be sold to the public; that, by virtue of the premises, the complainant has acquired the exclusive right to the manner and form of packing the same for sale, in connection with the words "Syrup of Figs" or "Fig Syrup," or any colorable imitation of the same, as a part of the business name of a concern making a liquid laxative medical compound.

The bill charges that the defendant company, wishing to trade to its own profit and advantage upon the reputation of the complainant's preparation, and desiring to impose a worthless production upon the public, has caused to be made, put up and sold, and offered for sale, a liquid laxative medical compound, resembling complainant's preparation, under the name "Syrup of Figs" and "Fig Syrup," and marking the boxes and packages containing the same with the name "Fig Syrup" or "Syrup of Figs," and has put the preparation, under said name, in bottles and packages or cartons, so closely in imitation of the complainant's bottles and packages, as to be likely to deceive purchasers, and so as to enable unscrupulous retail dealers to palm off defendant's preparation on the consumers as and for the complainant's preparation; and that purchasers frequently have been deceived and induced to buy the compound prepared

by the defendant; that the complainant has been greatly injured in the business in the manufacture of its liquid laxative preparation "Syrup of Figs" or "Fig Syrup," and believes that it has suffered damage and injury by reason of defendant's acts to the extent of at least ten thousand dollars; that this is a continuing wrong, and one which it is impossible to exactly calculate, and one which, if permitted to continue, will work irreparable injury to the complainant.

Wherefore the complainant prayed, in its said bill, for an injunction restraining the defendant and its agents, servants, etc., from manufacturing, selling or offering for sale, directly or indirectly, any liquid laxative medical preparation, marked with the words "Syrup of Figs" or "Fig Syrup," or marked with any words which may be a colorable imitation of the name of "Syrup of Figs" or "Fig Syrup," and from putting up, selling or dealing in any liquid laxative medical preparation which shall have a tendency to deceive the public and induce buyers to purchase defendant's preparation, believing the same to be complainant's preparation, and that defendant be perpetually enjoined from using the words "Fig Syrup Company" as a business name, or from using the words "Fig Syrup" or "Syrup of Figs" as part of its business name, in connection with the manufacture and sale of a liquid laxative preparation. The complainant also prayed for an account for damages to complainant and for gains and profits derived by the defendant company, and for such other and further relief as may be agreeable to equity and good conscience.

The defendant company and the other defendants filed a joint and several answer, admitting many of the allegations of the bill, but denying and putting the complainant on proof of those which alleged any intentional or actual appropriation by the defendant company of proprietory or business rights of the complainant. The answer proceeded to make the following allegations:

"And, for a separate and further defence, these defendants aver, upon their information and belief, that the preparation made and sold by complainant under the name of 'Syrup of Figs' does not and never did contain any syrup of figs or any

fig syrup; or any juice of figs or any part or portion or quantity of figs in any form; and that the name 'Syrup of Figs' and 'Fig Syrup' and the name of the company, 'The California Fig Company,' and the form and appearance of the labels and the pictures on the labels, and the statements on the labels adopted and used by complainant in connection with its liquid laxative medicine, were all designed, adopted and used with the deliberate intent and purpose to deceive the public and the user of the medicine and to perpetrate a fraud upon them by inducing them to believe that the preparation contained figs in some form, and that by reason thereof the said medicine derived its laxative properties and also a pleasant and agreeable taste; that the complainant has been successful in perpetrating the said fraud upon the public and for years last past has perpetrated said fraud by wholesale and have induced the public generally throughout the world to believe the statements aforesaid concerning the said medicine and its connection with figs, and thereby complainant has made and realized large profits, gains and advantages from the sale of said medicine, all of which was caused and which accrued and were made by reason of said false, fraudulent and deceptive statements; that, as a matter of fact the said so-called 'Syrup of Figs,' sold by complainant, consists of the ordinary and well-known laxative called senna as a basis, together with certain aromatic carminatives added for the purpose of giving it a pleasant and agreeable taste, as a cure to the naturally griping effect of senna when taken alone; that in order to sell such a compound complainant made the false, fraudulent and fictitious statements hereinabove charged against it, and was enabled to sell the same solely by virtue of said false, fraudulent and fictitious statements, and said complainant has built up its business and its trade upon the strength of and by virtue of the said false, fraudulent and fictitious statements, for which reason complainant is not entitled to relief in a court of equity."

The cause was put at issue by a replication filed by the complainant company. Pending the trial an application for a preliminary injunction was made, which was allowed upon the ground that the complainant had made such a showing by the

pleadings and affidavits that it was entitled to an injunction against the sales of "Fig Syrup" by the defendant.    86 Fed. Rep. 212.

A large amount of evidence was taken, and, on June 7, 1899, a decree was entered by the Circuit Court perpetually enjoining the defendant company and the other defendants from making, selling or offering to sell any liquid laxative medicine or preparation under the name of "Syrup of Figs" or "Fig Syrup," or under any name in colorable imitation of the name "Syrup of Figs," and from making, selling or offering to sell any medical liquid laxative preparation, put up in bottles, boxes or packages similar in form or arrangement to the bottles or packages used by the complainant in the manufacture and sale of its said liquid laxative preparation, or so closely resembling the same as to be calculated to deceive the public, and from using the name "Fig Syrup Company," and from using a name whereof the words "Fig Syrup," or "Syrup of Figs Company," form a part as a business name in connection with the manufacture of a liquid laxative preparation.    95 Fed. Rep. 132.

There was an appeal to the Circuit Court of Appeals for the Ninth Circuit, where the decree of the Circuit Court was affirmed, Ross, C. J., dissenting.    102 Fed. Rep. 334.

The cause was then brought to this court by a writ of certiorari allowed on November 20, 1900.

*Mr. John H. Miller* and *Mr. Purcell Rowe* for petitioner.

The words "Syrup of Figs" or "Fig Syrup" as applied to the medicine in question are either descriptive or deceptive and in neither event can they be appropriated as a trade mark.

Under § 991, Civil Code of California, no words can be adopted as a trade mark which relate to name, quality or description. *Choynski* v. *Cohen*, 39 California, 501; *Burke* v. *Cassin*, 45 California, 467; *Schmidt* v. *Brieg*, 100 California, 673; *Canal Co.* v. *Clark*, 13 Wall. 311, followed by a long list of instances showing the extent to which this rule has been carried.

In this case the words themselves, *ex proprio vigore*, convey the impression that the medicine is a syrup made from figs. *Brown Chemical Co.* v. *Meyer*, 139 U. S. 540.

If the compound contains no appreciable quantity of figs and there is no such thing known to pharmacy as a syrup made from figs, then the use of the words "Syrup of Figs" or "Fig Syrup," as a trade mark for this medicine is fraudulent and will not be protected in equity. *Leather Cloth Co.* v. *American Leather Cloth Co.,* 4 De G., J. & S. 137, 142, 144, affirmed 11 H. L. Cas. 523 ; *Manhattan Medicine Co.* v. *Wood,* 108 U. S. 218 ; *Holzapfel's Compositions Co.* v. *Rahtjen's Am. Composition Co.,* 183 U. S. 1 ; *Allan B. Wrisley Co.* v. *Iowa Soap Co.,* 104 Fed. Rep. 548 ; *Clotworthy* v. *Schepp,* 42 Fed. Rep. 62, 63 ; *Alden* v. *Gross,* 25 Mo. App. 123, 128, 130 ; *Connell* v. *Reed,* 128 Massachusetts, 147 ; *Seabury* v. *Grosvenor,* 14 Blatchf. 262, 263 ; *S. C.* Fed., Cas. 12,576 ; *Krauss* v. *Jos. R. Peebles' Sons,* 58 Fed. Rep. 585, 594 ; *Fetridge* v. *Wells,* 13 How. Prac. 385, 390, 393 ; *Schmidt* v. *Brieg,* 100 California, 672, 678 ; *Phalon* v. *Wright,* 5 Philadelphia, 464, 467 ; *Prince Mfg. Co.* v. *Prince Metallic Paint Co.,* 135 N. Y. 24, 38, 39. It has more than once been held that courts of equity will not intervene by injunction in disputes between the owners of quack medicines, meaning thereby remedies or specifics whose composition is kept secret and which are sold to be used by the purchasers without the advice of regular or licensed physicians. *Kohler Mfg. Co.* v. *Beeshore,* 8 C. C. A. 215 ; 59 Fed. Rep. 547, 572, 574 ; *Fowle* v. *Spear,* 1847, 7 Pa. Law J. 176 ; *Heath* v. *Wright,* 3 Wall. Jr. 141 ; *Wolfe* v. *Burke,* 56 N. Y. 115 ; *Smith* v. *Woodruff,* 48 Barb. 438 ; *Laird* v. *Wilder,* 9 Bush, 132.

The statement that the medicine is a *California liquid fruit remedy* is equally false. It is not a fruit remedy at all. The quantity of fruit in it is infinitesimal. Nor was it a California fruit remedy at the start, because it was invented, manufactured and sold in Nevada. Beyond all doubt the public has been grossly deceived by that statement, purchasing a concoction of drugs under the belief that they were purchasing a liquid fruit remedy, (then reciting formulæ). The medicine is nothing more than a decoction of senna mixed with sugar, water, flavoring extracts and a little ginger to prevent griping. *California Fig Syrup Co.* v. *Stearns,* 73 Fed. Rep. 813. In the new label there are several distinct misrepresentations in that the medicine is

not made from figs; does not overcome habitual constipation and the small quantity of juice of figs does not promote a pleasant taste or add anything to the medicine; again citing the cases already cited under the previous points and *Siegert* v. *Abbott*, 61 Maryland, 276.

The lower court erred in holding there had been unfair competition in trade by reason of simulated labels and wrappers. There is no showing that any one has ever been actually deceived, but even if there were such similarity between the labels of the appellant and appellee as to entitle the appellee to an injunction on the score of unfair competition, the appellee is disentitled to any such relief by reason of its fraudulent representations and practices regarding its medicine. If there be fraud on the part of a complainant he is not entitled to protection for his label any more than for his trade mark. In this respect both stand on the same footing.

There should in no event be any accounting as there is no allegation in the bill that the defendants (appellants) have ever realized any profits from the infringement.

Prior adjudications in other circuits clearly establish the fact that the appellees are not entitled to any relief.

*Mr. John G. Carlisle* and *Mr. Warren Olney* for respondent.

The lower court was right upon the doctrine of *unfair competition.*

It was proven here that the name was a true and honest name when applied to the medicine, and the wording on the cartons, criticized in other cases between the parties, was entirely eliminated long before the appellant flooded the Pacific coast with its counterfeits. Respondent, plaintiff below, has a standing in court, and the maxim relied upon by the appellant as to coming into court with clean hands does not apply in this case.

The inventor used senna as a basis for a liquid cathartic, overcoming the bitter taste and eliminating the griping quality with figs and named it "Syrup of Figs," and at first figs were uniformly used.

Among pharmacists and physicians a formula set out in the

U. S. Pharmacopia, to which a name has been given, becomes official and a recognized article. This preparation could not be called "Syrup of Senna," as there was an official formula for such a preparation, and as this was not made in accordance with such formula, physicians would have refused it recognition, so it was called "Syrup of Figs," and the record shows that the medical profession endorsed it and have not objected to the name. As figs were freely used it was natural to name the preparation "Syrup of Figs." There was no fraud. The reduction of figs was after the name had been given in good faith and after the demand required the manufacture of the article in large quantities.

Reversing this judgment will result in flooding the market with all kinds of nostrums under the name of "Syrup of Figs," will ruin the complainant and injure the public, and the only effect will be to enable the appellant to commit a fraud.

Where a man has an established business which he is seeking to protect from unfair competition, he should be given relief if he can make any reasonable explanation of statements claimed to be false; and he is entitled to the benefit of every reasonable doubt.

The following cases cited and quoted from at length: *Cochrane* v. *Macnish*, 1896, App. Cas. 225; *Ins. Oil Co.* v. *Scott*, 33 La. Ann. 946; *Siegert* v. *Findlater*, 7 Chan. Div. 801; *Fettridge* v. *Merchant*, 4 Abbott's Pr. 156; *Ford* v. *Foster*, 7 Chan. App. 611; *Bardou* v. *Lacroix*, 27 Annales, 214; Brown on Trade Marks, 83–85, criticizing *Siegert* v. *Abbott*, 61 Maryland, 276; *S. C.*, 48 Am. Rep. 101; *Meriden &c. Co.* v. *Parker*, 39 Connecticut, 450; *S. C.*, 12 Am. Rep. 401; *Simons Medicine Co.* v. *Mansfield Drug Co.*, 23 S. W. Rep. 169; *Smith* v. *Sixbury*, 25 Hun, 232; *Tarant Co.* v. *Hoff*, 76 Fed. Rep. 957; *Conrad* v. *The Joseph Uhrig Brewing Co.*, 8 Mo. App. 277; *Funke* v. *Dreyfus*, 34 La. Ann. 80; *Moxie Nerve Food* v. *Baumbach*, 32 Fed. Rep. 205; *Rogers Mfg. Co.* v. *Rogers & Spurr Mfg. Co.*, 11 Fed. Rep. 495 (in which are cited *Levy* v. *Walker*, L. R. 10 Ch. D. 436, and *Massam* v. *Thurley Co.*, L. R. 14 Ch. D. 748); *Price Baking Powder Co.* v. *Fyfe*, 45 Fed. Rep. 799; *Lawrence Mfg. Co.* v. *Tennessee Mfg. Co.*, 138 U. S. 537 (March 2, 1891); *So-*

*ciety Anonyme &c.* v. *West Distilling Co.*, 43 Fed. Rep. 416; *Selchow* v. *Baker*, 93 N. Y. 53, overruling *Fetridge* v. *Wells*, cited by appellants; *Cleveland Stone Co.* v. *Wallace*, 52 Fed. Rep. 431; *Metzler* v. *Wood*, 8 Ch. Div. 606; *Alexander* v. *Morse*, 14 R. I. 153; *S. C.*, 51 Am. Rep. 369; *Chappal* v. *Sheard*, 2 Kay & J. 117; *Chappal* v. *Davidson*, 2 Kay & J. 123; *Clark Thread Co.* v. *Armitage*, 74 Fed. Rep. 936; *Comstock* v. *White*, 18 How. Pr. 421; *Bloch* v. *Standard*, 95 Fed. Rep. 978; *Howie* v. *Chaney*, 143 Massachusetts, 592; *Curtis* v. *Bryan*, 36 How. Pr. 333; *Dole* v. *Smithsen*, 12 Abbott's Pr. 237; *Dickson's Crucible Co.* v. *Guggenheim*, 2 Brewster, 321; *Electro-Silicon Co.* v. *Hazard*, 29 Hun, 369; *Edelsten* v. *Vick*, 68 Jr. 7; *Feder* v. *Benkert*, 70 Fed. Rep. 613; *Holloway* v. *Holloway*, 13 Beavan, 209; *Keasby* v. *Brooklyn Chemical Works*, 142 N. Y. 467; *Lee* v. *Haley*, L. R. 1 Ch. Div. 155; *Marshall* v. *Ross*, 8 Eq. 651; *Pillsbury* v. *Pillsbury*, 64 Fed. Rep. 841; *Sen Sen* v. *Britton*, 1891, Ch. 692; *Shaver* v. *Heller &c. Co.*, 108 Fed. Rep. 821.

All the authorities are agreed that if complainant can make anything like a satisfactory explanation of a seemingly false statement on his labels, and in his advertisements, he will not be turned out of court. *Centaur Co.* v. *Robinson*, 91 Fed. Rep. 881; *Centaur Co.* v. *Neathery*, 91 Fed. Rep. 893. The following English cases were cited as based on the theory that the defendant was using a name for a fraudulent purpose, viz., to sell his goods as the goods of the plaintiff (the trademark name of the case is given and not the names of the parties): "*Glenfield Starch,*" L. R. 5 H. L. 508; "*Stone Ale,*" 4 Ch. Div. 35, 50.; "*Guinea Coal,*" 5 Ch. App. Cas. 155; "*Anatolia Licorice,*" 10 Jr. N. S. 40; De Gex, J. & S. 380; "*Ethiopian,*" 10 Jr. 106; "*London Conveyance Co.,*" 2 Keen, 213; "*Camel Hair Belting,*" 1896, App. Cas. 199; "*Yorkshire Relish,*" L. R. Ch. Div. 1895, vol. 3, 449; "*Club Soda,*" 1896, App. Cas. 225. In *Levy* v. *Walker*, 10 Ch. Div. 436, the rule is laid down: "You must not use a name, whether fictitious or real, or a description, whether true or not, which is intended to represent to the world that your business is my business, and therefore deprive me, by a fraudulent misstatement of yours of the profits of the business which would otherwise come to

me." The following American cases also cited: "*Akron Cement*," 51 N. Y. 192; "*Extra Dry*," 56 Fed. Rep. 830; "*St. Louis Lager Beer*," 24 Fed. Rep. 149; "*St. Louis White Lead*," 25 Fed. Rep. 125, and 39 Fed. Rep. 492; "*Nerve Food*," 32 Fed. Rep. 205; "*Singer Machine*," 163 U. S. 169; "*Minneapolis Flour*," 86 Fed. Rep. 608; "*German Sweet Chocolate*," 68 California, 68; "*Sliced Animals*," 93 N. Y. 53; "*Bromo-Caffeine*," 142 N. Y. 467; "*Congress Springs*," 45 N. Y. 291; "*Bethesda Mineral Water*," 42 Wisconsin, 118; "*Blue Licks Mineral Water*," 41 S. W. Rep. 21; "*Chicago Waists*," 83 Fed. Rep. 213; "*Red Cross Plasters*," 82 Fed. Rep. 662; "*Baker's Chocolate*," 80 Fed. Rep. 889; "*Canadian Club Whiskey*," 85 Fed. Rep. 776; "*Plymouth Gin*," 88 Fed. Rep. 693; "*Dyspepsia Tablets*," 91 Fed. Rep. 243; "*Carrom*," 106 Fed. Rep. 168; "*Celery Compound*," 106 Fed. Rep. 77; "*Queen Quality*," 105 Fed. Rep. 375; "*Health Food*," 104 Fed. Rep. 141; "*Gold Dust*," 102 Fed. Rep. 327; "*Oxford Bible*," 101 Fed. Rep. 442, also citing and distinguishing *Stuart* v. *F. G. Stewart Co.*, 91 Fed. Rep. 243; *Garrett* v. *Garrett*, 78 Fed. Rep. 472; *Lawrence Mfg. Co.* v. *Tennessee Mfg. Co.*, 138 U. S. 537. As to false representations citing *Koehler* v. *Sanders*, 127 N. Y. 74; *Thompson* v. *Montgomery*, 41 Ch. Div. 35; *Coats* v. *Thread Co.*, 149 U. S. 562; *Johnston* v. *Ewing*, L. R. 7 App. Cas. 219; *Manufacturing Co.* v. *Loog*, 18 Ch. Div. 412, *Wotherspoon* v. *Currie*, L. R. 5 H. L. 517; *Lever* v. *Goodwin*, 36 Ch. Div. 1, and other cases cited in "*Extra Dry*" case, 56 Fed. Rep. 830; *Collins Co.* v. *Brown*, 3 Kay & Johnson, 423; and citing *California Fig Syrup Co.* v. *Improved Fig Syrup Co.*, 51 Fed. Rep. 296; *Rawlinson* v. *Brainerd*, 59 N. Y. Supplement, 830; *Bass* v. *Feigenspan*, 96 Fed. Rep. 206, that a manufacturer may adopt as a trade mark a new combination of words which up to that time had no significance attached to them in the trade in which they are used . . . although they may be suggestive of the general nature of the article to which they are applied.

MR. JUSTICE SHIRAS, after making the foregoing statement, delivered the opinion of the court.

The courts below concluded, upon the evidence, that the defendants sold a medical preparation named, marked and packed, in imitation of the complainant's medicine, for the purpose and with the design and intent of deceiving purchasers and inducing them to buy defendants' preparation instead of the complainant's. We see no reason to dissent from that conclusion, and if there were no other questions in the case, we should be ready to affirm the decree, awarding a perpetual injunction and an account of the profits and gains derived from such unfair and dishonest practices.

Another ground, however, is urged against the complainant's right to invoke the aid of a court of equity, in that the California Fig Syrup Company, the complainant, has so fraudulently represented to the public the nature of its medical preparation that it is not entitled to equitable relief.

Some courts have gone so far as to hold that courts of equity will not interfere by injunction in controversies between rival manufacturers and dealers in so-called quack medicines. *Fowle* v. *Spear*, Circuit Court of the United States for the Eastern District of Pennsylvania, Pennsylvania Law Journal, vol. 7, p. 176; *Heath* v. *Wright*, 3 Wall. Jr. 141; *Fetridge* v. *Wells*, 4 Abb. Pr. 144.

It may be said, in support of such a view, that most, if not all, the States of this Union have enactments forbidding and making penal the practice of medicine by persons who have not gone through a course of appropriate study, and obtained a license from a board of examiners; and there is similar legislation in respect to pharmacists. And it would seem to be inconsistent, and to tend to defeat such salutary laws, if medical preparations, often and usually containing powerful and poisonous drugs, are permitted to be widely advertised and sold to all who are willing to purchase. Laws might properly be passed limiting and controlling such traffic by restraining retail dealers from selling such medical preparations, except when prescribed by regular medical practitioners.

But we think that, in the absence of such legislation, courts cannot declare dealing in such preparations to be illegal, nor the articles themselves to be not entitled, as property, to the protection of the law.

We find, however, more solidity in the contention, on behalf of the appellants, that when the owner of a trade mark applies for an injunction to restrain the defendant from injuring his property by making false representations to the public, it is essential that the plaintiff should not in his trade mark, or in his advertisements and business, be himself guilty of any false or misleading representation; that if the plaintiff makes any material false statement in connection with the property which he seeks to protect, he loses his right to claim the assistance of a court of equity; that where any symbol or label claimed as a trade mark is so constructed or worded as to make or contain a distinct assertion which is false, no property can be claimed on it, or, in other words, the right to the exclusive use of it cannot be maintained.

Among the cases cited to sustain this contention are the following:

In *Connell* v. *Reed*, 128 Massachusetts, 477, the plaintiff sought to establish the exclusive right to the words "East Indian," as applied to his remedy and the court, through Gray, C. J., said:

"The conclusive answer to this suit is . . . that the plaintiffs have adopted and used these words to denote, and to indicate to the public, that the medicines were used in the East Indies, and that the formula for them was obtained there, neither of which is the fact. Under these circumstances, to maintain this bill would be to lend the aid of the court to a scheme to defraud the public."

In *Siegert* v. *Abbott*, 61 Maryland, 276, where the subject matter of the trade mark was "Angostura Bitters," which purported to have been prepared by Dr. Siegert, at Angostura, Trinidad, and where it appeared that Dr. Siegert was dead, and had never lived at Angostura, the bill was dismissed, the court saying: "It is a general rule of law, in cases of this kind, that courts of equity will not interfere by injunction where there is any lack of truth in the plaintiff's case; that is, where there is any misrepresentation in his trade mark or labels."

In *Alden* v. *Gross*, 25 Mo. App. 123, a trade mark was claimed in the words "Fruit Vinegar," and the court said:

"The vinegar thus branded was not manufactured out of fruit, in the plain, ordinary, usual sense of that term, but out of low wines distilled from cereals, and fruit enters into its composition only to a very insignificant extent. . . . It would be a novel application of the rule governing the subject of trade marks, if one who manufactures vinegar out of cereals could appropriate for the article thus manufactured the word ' Fruit,' and thereby exclude another from using the word as descriptive of an article, which is, in point of fact, manufactured out of fruit. . . . But whether the word 'Fruit,' in this connection, is purely indicative of the character or quality of the article or not, the plaintiffs' exclusive claim to it must fail on the further ground, that the use of the word, in that connection, is clearly deceptive."

In *Prince Manufacturing Company* v. *Prince's Metallic Paint*, 135 N. Y. 24, an injunction to protect a trade mark was refused, by reason of a false representation as to the place from which the ore was obtained, and the Court of Appeals used the following language :

" Any material misrepresentation in a label or trade mark as to the person by whom the article is manufactured, or as to the place where manufactured, or as to the materials composing it, or any other material false representation, deprives a party of the right to relief in equity. The courts do not, in such cases, take into consideration the attitude of the defendant. . . . And, although the false article is as good as the true one, ' the privilege of deceiving the public even for their own benefit is not a legitimate subject of commerce.' "

English cases are to the same effect. Thus in *Pidding* v. *How*, 8 Simons, 477, where it appeared that the plaintiff had made a new sort of mixed tea, and sold it under the name of "Howqua's Mixture," but, as he had made false statements to the public, as to the teas, of which his mixture was composed, and as to the mode in which they were procured, the court refused to restrain the defendant from selling tea under the same name, and said :

" As between the plaintiff and the defendant, the course pursued by the defendant has not been a proper one ; but it is a

clear rule, laid down by courts of equity, not to extend their protection to persons whose case is not founded in truth. And, as the plaintiff, in this case, has thought fit to mix up that which may be true with that which is false, in introducing his tea to the public, my opinion is, that, unless he establish his title at law, the court cannot interfere on his behalf."

The English case of *Leather Cloth Co.* v. *American Leather Cloth Co.* is a leading one on this subject and in which the nature of false representations that will defeat the right of the owner of a trade mark to protection in equity was much considered.

A bill, asking for an injunction against defendants who were charged with using stamps and trade marks, so similar to those of the complainant as to deceive purchasers, was sustained by Vice Chancellor Wood, who granted the injunction prayed for. 1 Hem. & Miller's Reports, 271. On appeal the decree of the Vice Chancellor was reversed by the Lord Chancellor, and the complainant's bill was dismissed. 4 De Gex, J. & S. 137.

The conclusions reached by Lord Chancellor Westbury were that there is a right of property in a trade mark, name or symbol in connection with a particular manufacture or vendible commodity, but that where the owner of such a trade mark applies for an injunction to restrain the defendant from injuring his property by making false representations to the public, it is essential that the plaintiff should not in his trade mark or in the business connected with it be himself guilty of any false or misleading representation. In considering what constitutes a material false representation, the Chancellor observed that he could not receive it as a rule, either of morality or equity, that a plaintiff is not answerable for a falsehood, because it may be so gross and palpable as that no one is likely to be deceived by it; that if there be a wilful false statement, he would not stop to inquire whether it be too gross to mislead.

This decision was affirmed by the House of Lords. 11 H. L. Cas. 523. In that tribunal, in the several opinions of the law lords, the views of the Lord Chancellor as to the effect of false representations were approved, but it was thought that, independently of that question, the plaintiff was not entitled to an

injunction, because the rival or antagonistic trade mark of the defendants did not sufficiently resemble that of the plaintiff's as to be calculated to deceive the public.

In *Fetridge* v. *Wells*, 13 How. Pr. 385, the plaintiff sold a soap under the name of "Balm of a Thousand Flowers," and in denying the plaintiff's right to the exclusive use of these words as a trade mark, Judge Duer said:

"I am fully convinced that the name 'Balm of a Thousand Flowers' was invented, and is now used to convey to the minds of purchasers the assurance that the highly scented liquid to which the name is given is, in truth, an extract or distillation from flowers, and therefore not merely an innocent, but a pleasant and salutary preparation.    Not only is this the meaning that the words used naturally suggest; but in my opinion it is that which they actually and plainly express, and were designed to convey. . . .    Let it not be said, that it is of little consequence whether this representation be true or false.    No representation can be more material than that of the ingredients of a compound which is recommended and sold as a medicine. There is none that is so likely to induce confidence in the application and use of the compound, and none that, when false, will more probably be attended with injurious, and perhaps fatal consequences. . . .    Those who come into a court of equity seeking equity, must come with pure hands and a pure conscience.    If they claim relief against the fraud of others, they must be free themselves from the imputation.    If the sales made by the plaintiff and his firm are effected, or sought to be, by misrepresentation and falsehood, they cannot be listened to when they complain that by the fraudulent rivalry of others their own fraudulent profits are diminished.    An exclusive privilege for deceiving the public is assuredly not one that a court of equity can be required to aid or sanction.    To do so would be to forfeit its name and character."

In *Manhattan Medicine Co.* v. *Wood*, 108 U. S. 218, the case of *Fetridge* v. *Wells* was cited with approval, and likewise the English cases of *Pidding* v. *How*, 8 Simons, 477, and *The Leather Cloth Company* v. *The American Leather Company*, 4 De Gex, J. & S. 137.    In *Manhattan Medicine Co.* v. *Wood*,

the complainant claimed to be the owner of a patent medicine and of a trade mark to distinguish it. The medicine was manufactured by the complainant in New York; the trade mark declared that it was manufactured by another person in Massachusetts. The Circuit Court of the United States for the District of Maine, per Mr. Justice Clifford, held that the complainant, owing to false statements in his trade mark, was entitled to no relief against a person using the same trade mark in Maine, and dismissed the bill. On appeal this decree was affirmed, this court saying : " A court of equity will extend no aid to sustain a claim to a trade mark of an article which is put forth with a misrepresentation to the public as to the manufacturer of the article, and as to the place where it is manufactured, both of which particulars were originally circumstances to guide the purchaser of the medicine."

In *Clotworthy* v. *Schepp*, 42 Fed. Rep. 62, the right to a trade mark was claimed in the word " Puddine," in connection with the words " Rose " and " Vanilla," but Circuit Judge Lacombe refused an injunction, and in his opinion said : " The complainant himself is engaged in deceiving the very public whom he claims to protect from the deception of others. He calls his preparation ' fruit ' puddine. In nine different places on his package this word ' fruit ' is repeated, as descriptive of the article, and a dish of fruit (pears, grapes, etc.) is most prominently depicted on one face of each packet. His packages plainly suggest that fruit of some kind enters in some shape into his compound. A chemical analysis produced by defendant, the substantial accuracy of which is not disputed, discloses the fact that his ' puddine ' is composed exclusively of corn starch, a small amount of saccharine matter, and a flavoring extract, with a little carmine added to give it color; it contains no fruit in any form."

*Krauss* v. *Peebles' Sons Co.*, 58 Fed. Rep. 585, was a case in which it was shown that the liquor sold as " Pepper Whisky " was in fact a mixture of Pepper whisky and other whiskies, and an injunction to prevent infringement was refused by Circuit Judge Taft, who, in his opinion, said : " To bottle such a mixture, and sell it, under the trade label and caution above

referred to, is a false representation, and a fraud upon the purchasing public. A court of equity cannot protect property in a trade mark thus fraudulently used."

And this doctrine of the English and American cases above referred to has been applied in the Federal Circuit Courts and Circuit Courts of Appeals in cases in which the California Syrup Company, the complainant in the present case, was a party.

In the Circuit Court of the United States for the District of Massachusetts, March 6, 1895, the California Fig Syrup Company, the complainant in the present case, filed a bill against Kate Gardiner Putnam and others to restrain the infringement of the plaintiff's trade mark. The facts of the case were thus stated by Circuit Judge Colt in his opinion, reported in 66 Fed. Rep. 750 :

" The plaintiff is the proprietor and manufacturer of a liquid laxative compound called 'Syrup of Figs.' The defendants manufacture and sell a laxative medicine which they term 'Fig Syrup.' . . . There is no evidence that the defendants have imitated the plaintiff's labels or packages except in this particular. If this preparation is in fact a syrup of figs, the words are clearly descriptive, and not the proper subject of a trade mark. Upon this point the contention of the plaintiff is that its preparation is not a syrup of figs, since it contains only a very small percentage of the juice of the fig; that the laxative ingredient in it is senna; that while the fig in the form of fruit may have laxative properties arising from the seeds and skin, the fig in the form of a syrup is no more laxative than any other fruit syrup; that it follows from these facts that these words, as applied to this compound, are not descriptive, but purely fanciful, and therefore constitute a valid trade mark. The evidence shows that the compound is not a syrup of figs. It might more properly be termed a 'Syrup of Senna,' if the words were intended to be descriptive of the article. But, assuming this is not a syrup of figs, we are met with the inquiry whether these words, as applied to this preparation are not deceptive. The label on every bottle reads as follows: 'Syrup of Figs. The California Liquid Fruit Remedy. Gentle and Effective.' On the sides of each bottle are blown the words 'Syrup of Figs,'

and on the back the words ' California Fig Syrup Co., San Fran-
cisco, Cal.' On the face of every package is a picture of a
branch of a fig tree with the hanging fruit, surrounded with the
words ' California Fig Syrup, San Francisco, Cal.; ' and beneath
this the words : ' Syrup of Figs presents in the most elegant form
the laxative and nutritious juice of the figs of California.'   .  .  .
Thus we see that the leading representation on the labels, pack-
ages, and in the advertisements of this preparation is that it is a
laxative fruit syrup made from the juice of the California fig.
.  .  .  The popularity of this medicine arises from the belief
in the mind of the ordinary purchaser that he is buying a laxa-
tive compound, the essential ingredient of which is the Califor-
nia fig, whereas, in fact, he is buying a medicine the active prop-
erty of which is senna.   The ethical principle on which the law
of trade marks is based will not permit of any such deception.
It may be true, as a scientific fact known to physicians and
pharmacists, that the syrup of figs has little or no laxative prop-
erty; but this is not the belief of the general public.   They pur-
chase this preparation on the faith that it is a laxative compound
made from the fruit of the fig, which is false.   This is not an
immaterial representation the effect of which is harmless, but
it is a representation which goes to the very essence of the plain-
tiff's right to a trade mark in these words.   The cases are nu-
merous where the courts have refused to grant relief under these
circumstances."

Accordingly, the Circuit Court dismissed the bill with costs.
On appeal to the Circuit Court of Appeals for the First Circuit
the decree of the Circuit Court was affirmed.

In the Circuit Court of the United States for the Eastern
District of Michigan, April 1, 1895, the California Fig Syrup
Company filed a bill, seeking to restrain Frederick Stearns &
Company from infringing complainant's trade mark.   The court
declined to grant an injunction and dismissed the bill with costs,
holding that the words " Syrup of Figs" or " Fig Syrup," if
descriptive of a syrup, one of the characteristic ingredients of
which is the juice of the fig, cannot be sustained as a valid trade
mark or trade name, and that, under the facts of the case, the
use of the name " Syrup of Figs, in connection with a descrip-

tion of the preparation as a fruit remedy, nature's pleasant laxative," applied to a compound, whose active ingredient is senna, and containing but a small proportion of fig juice, which has no considerable laxative properties, is deceptive and deprives one so using it of any claim to equitable relief.

On appeal to the Circuit Court of Appeals of the Sixth Circuit the decree of the Circuit Court was affirmed.    73 Fed. Rep. 812.    In his opinion Circuit Judge Taft, after stating that the term "Syrup of Figs," if intended to describe the character of the article concerned, could not be used as a trade mark, proceeded to say :

" But the second ground presented, and that upon which the court below rested its decision, prevents the complainant from having any relief at all.    That ground is that the complainant has built up its business and made it valuable by an intentional deceit of the public.    It has intended the public to understand that the preparation which it sells has, as an important medicinal agent in its composition, the juice of California figs.    This has undoubtedly led the public into the purchase of the preparation.    The statement is wholly untrue.    Just a suspicion of fig juice has been put into the preparation, not for the purpose of changing its medicinal character, or even its flavor, but merely to give a weak support to the statement that the article sold is syrup of figs.    This is a fraud upon the public.    It is true, it may be a harmless humbug to palm off upon the public as syrup of figs what is syrup of senna, but it is nevertheless of such a character that a court of equity will not encourage it by extending any relief to the person who seeks to protect a business which has grown out of and is dependent upon such deceit. It is well settled that if a person wishes his trade mark property to be protected by a court of equity, he must come into court with clean hands, and if it appears that the trade mark for which he seeks protection is itself a misrepresentation to the public, and has acquired a value with the public by fraudulent misrepresentation in advertisements, all relief will be denied to him.    This is the doctrine of the highest court of England, and no court has laid it down with any greater stringency than the Supreme Court of the United States.    *Medicine Co.* v.

*Wood*, 108 U. S. 218; *Leather. Cloth Co.* v. *American Leather Cloth Co.*, 4 De Gex, J. & S. 137. . . .

"The argument for complainant is that, because fig juice or syrup has no laxative property, everybody ought to understand that when the term is used to designate a laxative medicine it must have only a fanciful meaning. But the fact is admitted that the public believe that fig juice or syrup has laxative medicinal properties. It is to them that the complainant seeks to sell its preparation, and it is with respect to their knowledge and impressions that the character, whether descriptive or fanciful, of the term used, is to be determined."

The counsel of the appellee in the present case do not contend that the courts of the Second and Sixth Circuits were wrong in denying the complainant any relief upon the cases as presented in those courts. They do contend that those cases were argued upon a wrong theory by the counsel of the complainant. The language of the brief in this regard is as follows:

"Here was where complainant made a mistake. Acting under advice of able counsel, it claimed the name 'Syrup Figs' to be a technical *trade mark*, when all that was necessary to claim was that it constituted a *trade name*. Able counsel in the Second and Sixth Circuits pressed injunction suits against infringers on the theory that complainant had a trade mark in the name, and that the statement on the cartons and bottles was immaterial. He did not address himself to showing that the name 'Syrup of Figs' came to be honestly and properly applied to the product as largely descriptive of the ingredients of the medicine. He was so afraid of ruining his case as a case of trade marks, by showing that it was descriptive, that he did not prove what was proved in the case now at bar, viz., that figs were at the time the name was given an important part of the composition."

We are not much impressed with the force of this attempted distinction. Even if it were true that, at the time the medicine in question was first made and put upon the market, the juice of figs was so largely used as one of the ingredients, as to have warranted the adoption of the name "Syrup of Figs" as descriptive of the nature of the medicine, that would be no justification

for continuing the use of the term after the manufacturers and vendors of the medicine ceased to use fig juice as a material ingredient. Even if the term was honestly applied in the first instance, as descriptive, it would none the less be deceptive and misleading when, as is shown in the present case, it ceased to be a truthful statement of the nature of the compound. Nor are we disposed to concede that, under the evidence in the present case, the term " Syrup of Figs " or " Fig Syrup " was properly used as descriptive of the nature of the medicine when it was first made. Then, as now, the operative laxative element was senna, and the addition of fig juice was, at the best, experimental, and apparently was intended to attract the patronage of the public by holding out the name of the medicine as " Syrup of Figs."

However that may be, it is now admitted that the use of figs was found to be deleterious, and their use, as a substantial or material ingredient, was abandoned. The following extracts are taken from the testimony of the inventor of the medicine now made and sold by the California Fig Syrup Company :

" During the year 1878 I made many experiments with the idea of producing a pleasant, effective, liquid laxative, having observed that many people dislike to take pills, oils and other disagreeable medicines ; and, after many experiments and study of laxatives in general, came to the conclusion that senna was the best general laxative known, but that the preparations then on the market were either weak in effect or griping in their nature, and I thought that if I could make a liquid preparation of senna which would be really pleasant to the taste and free from griping qualities that it would answer the purpose. And at that time I also thought that certain other medicinal agents should be combined with the senna, and some of those medicinal agents were not very pleasant to the taste. And I thought of figs as a fruit that would afford me a considerable quantity of sugar and mucilaginous substance to counteract the unpleasant taste of the medicinal agents. And I used figs freely in my experiments for that purpose. As I progressed with my experiments I found or determined as a result of my experiments and studies that a uniformity and stability of product were of great im-

portance, and that the fig substance was not conducive to those qualities, and that it had a strong tendency to ferment, and therefore it would be better to use a small quantity. I also found that those medicinal agents which were unpleasant to the taste were better adapted to special cases than to general use, and concluded to omit them, and therefore did not need as large a quantity of fig substance as formerly. As finally prepared I had a new and original compound, of which the fig syrup formed a very small but pleasant part, although not an essential part of the combination; that is, I might have used an equal quantity of honey, or some other substance, instead of the fig substance, without changing the character and effect of the combination. . . . I desired to give a name which would be new and original to distinguish my product from all the laxative medicines, and which would be pleasantly suggestive, and, after thinking over a number of names, I decided to use the name 'Syrup of Figs.' I knew that I was not using the name generically, because figs did not give character and effect to the combination."

On cross examination this witness further stated that "we still use figs when we might use some other pleasant substance, because we first started to use figs; and the fig substance, while it is used, is not an essential part of the compound or what I would call an essential part of the compound. That is, not a part of the compound which gives to it its distinctive aromatic and medicinal qualities."

That the complainant company, years after it had established a popular demand for its product, issued statements in medical journals and newspapers and circulars, that the medical properties of their compound were derived from senna, does not relieve it from the charge of deceit and misrepresentation to the public. Such publications went only to giving information to wholesale dealers. The company by the use of the terms of its so-called trade mark on its bottles, wrappers and cartons continued to appeal to the consumers, out of whose credulity came the profits of their business. And, indeed, it was the imitation by the defendants of such false and misleading representations that led to the present suit.

The bill in the present case contains the following allegations:

"Your orator further states that this laxative medical compound, or preparation, made and put up as aforesaid by your orator, has always been marked, named and called by your orator 'Syrup of Figs,' being advertised by your orator under that name, the name 'Syrup of Figs' being printed or otherwise marked upon every bottle of this preparation made and sold by your orator—this name being also printed upon the boxes, packages or wrappers in which the bottles of this preparation are packed for shipment and sale; that it has been the practice of your orator to put the bottles containing this preparation in oblong pasteboard boxes or cartons, so that they will reach the consumer in that form; that in all instances, not only the bottle which contains this preparation, but the box or carton which contains the bottles of this preparation, is marked with the words 'Syrup of Figs' and also contains printed matter stating that this preparation is a medical laxative preparation, and also giving a general idea of its uses and purposes. . . . Your orator further states that it and its said predecessor in interest were the first to pack and dress or mark a liquid laxative preparation or medicine in the manner illustrated by Exhibits " A " and " B "—that is to say, in an oblong, rectangular box or carton, with statements of the virtues of this preparation printed in different languages upon the back and sides of the carton, and having on the front of the carton and on the border within which, at the top, is a representation of a branch of a fig tree, bearing fruit and leaves, surrounded by the words ' Fig Syrup Company,' or ' California Fig Syrup Company,' and below which appear, in larger letters, the words ' Syrup of Figs.' "

Upon such allegations and the admissions of the complainant's principal witness, some of which are hereinbefore quoted, and upon the entire evidence in the case, and in the light of the authorities cited by the counsel of the respective parties, our conclusions are that the name " Syrup of Figs " does not, in fact, properly designate or describe the preparation made and sold by the California Fig Syrup Company, so as to be

susceptible of appropriation as a trade mark, and that the marks and names, used upon the bottles containing complainant's preparation, and upon the cartons and wrappers containing the bottles, are so plainly deceptive as to deprive the complainant company of a right to a remedy by way of an injunction by a court of equity.

　　*Accordingly, the decree of the Circuit Court of Appeals is reversed; the decree of the Circuit Court is also reversed, and the cause is remanded to that court with directions to dismiss the bill of complaint.*

Mr. Justice McKenna dissented.