## BROOTEN v. OREGON KELP ORE PRODUCTS CO.

Circuit Court of Appeals, Ninth Circuit. February 27, 1928.

No. 5248.

Trade-marks and trade-names and unfair competition ⬅═3(4½)—Under the facts shown, the name "Kelp Ore," held not subject to appropriation as trade-mark.

Complainant discovered on the seacoast a substance previously unknown and unnamed, which he put up in packages and sold for medicinal purposes, claiming in his advertising matter that it was composed of kelp, washed up by the sea long before, which had become mineralized from the soil. For 17 years he advertised and sold it under the name of "Kelp Ore." Held, that during that time the term had become recognized as descriptive of the substance, and that he could not there after claim the right to its exclusive use as a trade-mark.

Appeal from the District Court of the United States for the District of Oregon; Robert S. Bean, Judge.

Suit in equity by H. H. Brooten against the Oregon Kelp Ore Products Company. Decree dismissing bill, and complainant appeals. Affirmed.·

P. J. Gallagher, Veazie, & Veazie, McCamant & Thompson, and Ralph H. King, all of Portland, Or., for appellant. ·

T. J. Geisler, of Portland, Or., for appellee.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

DIETRICH, Circuit Judge. This is a suit to enjoin infringement of a trade-mark. Sustaining a motion to the amended bill, supplemented by answers to interrogatories propounded by defendant, the court below entered a decree of dismissal, from which plaintiff appeals. Admittedly defendant infringes if plaintiff has a valid trade-mark in the words "Kelp Ore," and hence consideration is limited to the one question.

About 1898 plaintiff discovered upon land belonging to him in Tillamook county, Oregon, a deposit containing salts and other minerals. Conceiving it to be of medicinal value, he put it on the market under various names, such as "Iodine Earth," "Melitite," and "Brooten's Medicinal Mud." Becoming convinced that it could be improved, so he alleges, by drying it and exposing it to the elements, he so treated it, but added nothing to it, and thereupon advertised and sold it as "H. H. Brooten's Kelp Ore." While from 1906 to 1923 he so designated it in his advertising matter, it was put out and marketed in plain paper bags, without brand or mark of any character. In 1923 he adopted a uniform style of labels, which were put upon the containers in which the product was offered for ·sale; the labels bearing the words "Kelp Ore" printed in large letters, preceded by the plaintiff's name, "H. H. Brooten's," in somewhat smaller type. Under that label the product in both solid and liquid form was sold up until the time this suit was commenced, and under it the plaintiff established a very considerable ·trade. In April, 1924, he filed in the Patent Office an application for registration of "H. H. Brooten's Kelp Ore" as a trade-mark, and on September 22, 1925, the Commissioner of Patents issued to him a certificate of registration. The drawing accompanying the application exhibits on two lines thus:

"H. H. BROOTEN'S
KELP ORE."

—Kelp Ore, as on the labels previously used, being in somewhat larger and more conspicuous type. The application contains the statement, "no claim being made to the name H. H. Brooten, which is the name of the applicant appearing in the drawing, apart from the mark as shown." Thenceforth there was

noted on his label, "Registered U. S. & Can. Pat. Offices." Up to this time neither the defendant nor any other person had used or claimed the right to use the name "Kelp Ore," but about October 21, 1925, shortly after plaintiff's registration, defendant began to put on the containers in which it marketed a similar product, the label "S. B. Kelp Ore."

So far as appears, plaintiff was the first discoverer of the deposit from which his product is supplied, and when so discovered it had no scientific or other name. It was a new substance, requiring a new name, and for reasons variously explained by him he chose to call it "Kelp Ore," under which name for 17 years he sold it on the market and by advertising matter educated the public touching its qualities and uses. Owing to the fact that prior to 1923 the substance was sold in packages bearing no label or other mark, plaintiff virtually concedes that such use as he made of the name up to that time initiated no trade-mark rights. An effort is now made to distinguish between the deposit and the substance marketed, in support of the contention that the name was applied only to the finished product, and hence is not descriptive of the material in its natural form. But plainly this is an afterthought, wholly irreconcilable with not only the general purport of plaintiff's circular literature, but with express statements more or less frequently made therein. For example, the circular (Exhibit No. 6) accompanying his answer to interrogatories has on the title page this language:

"H. H. BROOTEN'S KELP ORE."

"Nature's Health Gift from the Ocean."

"The Century's Greatest Medical Discovery."

"A formula perfected and compounded in the laboratory of Mother Nature."

And turning to the inside of the circular, with much else we find under the heading, "BROOTEN'S KELP ORE," the following:

"In the summer of 1904 H. H. Brooten, while working about his little farm at the head of Nestucca Bay, on the coast of Oregon, discovered a deposit of mineralized kelp, Kelp Ore."

And again:

"Volumes could be written in its description. Great chemists have endeavored to seek out its elusive 'something'; that element or elements that go to make up this great medicinal compound from the mortar of Mother Nature. Nothing added, nothing subtracted, from its wondrous formula by the hand of man," etc.

24 F.(2d)—32

And in another circular (Exhibit No. 1), under the heading: "Kelp Ore. Its Origin" —it is stated that in the far-distant past the ocean waves deposited quantities of kelp, and in the process of time, combining with the mineral of the soil, it hardened to a consistency of soft rock, etc.

If we accept these and many other statements contained in the exhibited literature as having been made in good faith, we must conclude that what plaintiff sells is in all substantial respects Mother Nature's formula, with nothing added and nothing subtracted by the hand of man, and that he applied to both the deposit and the product sold the name "Kelp Ore" as a term descriptive of its origin and character. Were we to doubt the validity of his theory and regard it as merely fanciful, and hence reject the term "Kelp Ore" as being scientifically appropriate, it would still remain true that plaintiff intended it to be descriptive, and by its use for that purpose it became a generic name, by which the deposit and the product came to be known to and to be called by the public. It hardly need be said that, though scientifically or etymologically indefensible, a term may become generically descriptive by common use. That plaintiff himself thought of "Kelp Ore" as a term generally descriptive of a kind of deposit or product wherever found is made clear by the fact that invariably he identified his particular product and deposit as "Brooten's Kelp Ore," or "H. H. Brooten's Kelp Ore." And when he came to apply for the registration of a trade-mark his drawing was not for "Kelp Ore," but for "H. H. Brooten's Kelp Ore." The attendant statement already referred to does not eliminate any part of the mark so exhibited upon the drawing, but only negatives any claim for his name, "apart from the mark as shown," of which mark, so shown, "H. H. Brooten's" is a constituent part.

Hence, if we assume plaintiff's good faith, it must be held that, in calling the newly discovered material "Kelp Ore" and making it generally known as such during the period of 17 years, he intended the name to be generically descriptive, and he cannot now adopt it as a trade-mark, to the exclusion of the right of others to apply the name to substances of similar origin and character. Hostetter et al. v. Fries et al. (C. C.) 17 F. 620; Thomson v. Winchester, 19 Pick. (Mass.) 214, 31 Am. Dec. 135; Singleton v. Bolton, 3 Doug. 293; Conham v. Jones, 2 Ves. & B. 218, 13 Rev. Rep. 70.

It may be that it was due solely to plain-

tiff's activities and advertising, during the period of 17 years before he sought to use the term as a trade-mark, that the substance became generally known to the public as "Kelp Ore," but such a consideration would seem to be equally cogent in a case where under the monopoly of his patent a patentee has given to his device a name and under it established a market. But it is well settled that upon the expiration of a patent any one is at liberty to manufacture the patented device and to market it under the name by which it has thus become generally known. Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 16 S. Ct. 1002, 41 L. Ed. 118.

If, upon the other hand, we were to assume that plaintiff from the beginning regarded the words "Kelp Ore" as a purely fanciful term, and did not believe that the deposit is ore, or that its constituent salts came from kelp, and hence has not acted in good faith, but adopted and has used the term for deceptive purposes, he would be without footing to ask for relief. Paul on Trade-Marks, § 65; Worden & Co. v. Cal. Fig. Syrup Co., 187 U. S. 516, 23 S. Ct. 161, 47 L. Ed. 282.

Judgment affirmed.