## In re BONIDE CHEMICAL CO., Inc.

### Patent Appeal No. 2575.

Court of Customs and Patent Appeals.

Feb. 3, 1931.

Richard R. Martin, of Utica, N. Y., for appellant.

T. A. Hostetler, of Washington, D. C., for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

Appellant, Bonide Chemical Company, Inc., made application in August, 1928, for registration, under the Trade Mark Act of February 20, 1905 (15 USCA §§ 81–109), of the compound word "crow-tox" as a trademark for use on a "preparation for protecting seed against birds and animals and for invigorating seeds."

Registration was denied by the Examiner, and his decision was affirmed by the Commissioner of Patents. Appeal was then taken to this court.

It appears that when the Examiner first came to consider the application, after the formality of publication had been complied with, he reached the conclusion that registration should be denied upon the ground that the word was merely descriptive of the goods on which it was used, being of the impression that the preparation was poisonous in character and thinking "crow-tox" to be the equivalent of "crow-poison." He so held, citing Larvex Corporation v. Peter G. Walter, which appears to be 151 MS. Dec. 763,

by the Commissioner of Patents, rendered September 7, 1928.

Thereupon appellant amended his original combined petition and statement by inserting therein the word "non-poisonous", so that it read: " * * * Has adopted and used the trade mark shown in the accompanying drawing for a non-poisonous preparation. * * * "

Upon consideration of the application as thus amended, the Examiner adhered to his former decision, saying: "It is immaterial whether or not a mark is truly or falsely descriptive. (See In re National Phonograph Co., 128 O. G. 1295, 1907 C. D. 530.)"

In affirming the decision of the Examiner, the Commissioner (Assistant Commissioner Moore) said:

"The law * * * specifically provides that no trade-mark which consists 'merely in words or devices which are descriptive of the goods with which they are used, or of the character or quality of such goods,' shall be registered; and the Courts have uniformly held that marks which are deceptive are not entitled to protection as a property right. * * *

"The trade-mark Act does not forbid registration of descriptive words or devices as trade-marks, but only those which are descriptive of the goods, or the character of quality of the goods, with which they are used. Therefore, in order to determine whether words or devices used as trade-marks are descriptive of the goods or are deceptive, it is necessary to ascertain the probable effect such words or devices, when given their usual meaning, have upon the public mind. The meaning of some descriptive words or devices used as trade-marks is so foreign to the qualities or characteristics of the class of goods with which they are used as to render it unlikely that they would ever be regarded as used descriptively or deceptively. In such cases the marks are arbitrary and fanciful and form proper technical trade-marks. It is where the meaning of the words or devices is descriptive of the qualities or characteristics of the class of goods with which they are used as trade-marks that their registration is prohibited by the trade-mark Act.

"The applicant's mark is primarily for a preparation for protecting seed against birds and animals. It is common practice to include a poison in preparations of this class. The applicant's trade-mark 'Crow-Tox' would therefore suggest to the mind of the public that the goods with which the mark is used

is a poison, the word 'tox' being defined the same as 'toxic' and 'toxico' from the Greek 'toxicon,' poison, a combining form.

"It is contended by the applicant, however, that its mark is not descriptive of the goods, as the goods contain no poison for crows. This being true, then the mark is deceptive, as one wishing to purchase a poison for crows would be deceived into purchasing the applicant's non-poisonous preparation."

The contention made before us appears to be, in substance, the same as that recited to have been made before the Commissioner. It is very frankly conceded by learned counsel for appellant that "crow-tox" has the same meaning as "crow-poison," and that, if the preparation of appellant were, in fact, poisonous, the word would be descriptive of the character and quality of the goods, and hence its registration would be barred by the express terms of the statute.

This concession as to the real meaning of "crow-tox" is, we think, correct. There are in common use in the English language many words derived wholly, or in part, from the Greek word "toxicon" which means poison. Examples are "toxic," "toxicant," "toxication," "toxicologist," "toxicomania," "toxiferous," "toxin," and the like. This class of words is related to, and carries to all the suggestion of, poison. This suggestion is, of course, conveyed by the use of the syllable "tox."

In Funk & Wagnalls New Standard Dictionary "tox" as a complete word is not found, but it is given and defined thus:

"Tox—1. Same as toxico—

"Tox—2. Same as toxo—

"Tox., toxicol., abbr. Toxicology."

"Toxic" as a word is there defined: "1. Pertaining to or having the nature of poison; poisonous; as, a toxic substance."

In Webster's New International Dictionary "tox" as a complete word is listed as being obsolete. It there appears thus: "Tox, v. t. To intoxicate. obs."

We think, therefore, that "crow-tox" is in all respects, as regards its meaning, the same as "crow-poison." Hence the effort to register it under appellant's amended application raises the somewhat novel question whether, under the Registration Statute, a word may be registered as a trade-mark when it is used upon a preparation which it, in fact, misdescribes. It does not speak the truth. If it did, admittedly, it would not be registrable. Since it speaks falsely, may it be admitted as not descriptive?

It is argued that this proceeding is purely statutory, and that the Patent Office and this court are bound by the naked words of the statute; that we have no concern, when descriptiveness is the only issue involved, except to ascertain the bald fact of whether the mark is merely descriptive, that is, whether it is truly descriptive; that the law is so drawn as to encourage registration, and that there is a requirement that no trade-mark shall be refused registration, except in designated cases, which "is just as imperative as the prohibition of the proviso against registration in cases specified," citing Beckwith's Estate, Inc., v. Commissioner of Patents, 252 U. S. 538, 40 S. Ct. 414, 64 L. Ed. 705, 274 O. G. 613, 1920 C. D. 471.

█ Fully recognizing the fact that the proceeding is purely statutory, we nevertheless cannot acquiesce in this contention to the extent that appellant's insistence would lead.

By the terms of the statute, *ownership* is an express prerequisite of the right to register. The opening words of the Trade-Mark Registration Act are: "That the *owner* of a trademark * * * may obtain registration. * * *" (Italics ours.)

This court, following many decisions of the Court of Appeals of the District of Columbia (our predecessor in this particular line of trade-mark jurisdiction) and of other courts having jurisdiction of trade-mark questions, including the Supreme Court of the United States, has had several occasions to point out that, in passing the Trade-Mark Registration Act, Congress added nothing to and took nothing from the common-law principles applying or relating to trade-mark ownership. B. F. Goodrich Co. v. Kenilworth Mfg. Co., 40 F.(2d) 121, 17 C. C. P. A. 1105; Sun-Maid Raisin Growers of California v. American Grocer Co., 40 F.(2d) 116, 118, 17 C. C. P. A. 1034, 1037, and numerous cases therein cited. In re Plymouth Motor Corp., 46 F.(2d) 211, 18 C. C. P. A. ——.

In the Sun-Maid Raisin Growers Case, supra, we said: "Congress by the enactment of the Trade-Mark Act of 1905 (15 USCA §§ 81–109) never intended to authorize the registration of a trade-mark, the use of which could be prevented by resort to common law. See California Packing Corp. v. Tillman & Bendel, Inc., 40 F.(2d) 108, 17 C. C. P. A. 1048, and B. F. Goodrich Co. v. Clive E. Hockmeyer (Zip-On Mfg. Co., substituted), 40 F.(2d) 99, 17 C. C. P. A. 1068, both decided concurrently herewith. Also, see Yale Electric Corp. v. Robertson (C. C. A.) 26 F.

(2d) 972, and Levy v. Uri, 31 App. D. C. 441."

Bearing upon this question also are declarations of American Steel Foundries v. Robertson, 269 U. S. 372, 46 S. Ct. 160, 70 L. Ed. 317.

Trade-mark ownership primarily is a matter growing out of adoption and use of a mark, but, in order actually to have valid title to a mark which the courts will protect other elements than these must be present. Use is an indispensable attribute, and it must be a legal use, justified upon sound principles of truth and morality. Such principles are basic in all law.

We are at a loss to understand how one can acquire legal title—an ownership protectable in the courts—of a mark (there being no ownership except when predicated upon use) which it is proposed to apply to a product, and by it indicate that the product is of a particular character or quality, when, in fact, it has no such quality, and then secure registration of the mark, on its face descriptive, upon the statement that it is not descriptive because false and misleading. It is inconceivable that Congress ever intended that any such result should be accomplished under the Registration Statute, notwithstanding the declaration that no mark, save certain excepted ones, should be refused registration.

There is argument by the appellant that as a matter of fact there is no foundation "for the conclusion that any purchaser of a material to keep crows away from seed corn would be misled by the use of the trade mark Crow-Tox on a material non-poisonous." The only reason for this given by appellant is: "No farmer would be anxious to purchase such a material having poisonous qualities by preference." It is also pointed out that there was filed in the hearing in the Patent Office, or with the amended application, "a copy of one of the circulars used in advertising and selling applicant's material upon which there is shown underscored in ink the statements 'Crow-Tox is non-poisonous and will not injure any kind of corn. Neither will it clog any planter or kill birds or animals.'"

This argument is beside the issue. It is the word of the mark, not the statement of an advertising circular which appellant seeks to register, and the fact that a farmer might not buy crow poison by preference has no bearing upon the merits of the question. As a matter of fact, basing our conclusion upon common observation and experience in life, we do not doubt but many farmers would, at frequent intervals, much prefer poison for these pestiferous creatures.

There is little direct authority to be found in judicial decisions upon the purely registration feature of such marks. This is probably due to the fact that there have been few instances where attempts have been made to register marks upon their face descriptive, but avowed in the application not to be, for the reason that it was intended to use them upon products that would not conform to the implication or meaning of the marks.

The precedents of the Patent Office tribunals are cited in their decisions, supra.

Worden & Co. v. California Fig Syrup Co., 187 U. S. 516, 23 S. Ct. 161, 47 L. Ed. 282, was a proceeding in equity. Defendant there sought an injunction against plaintiff to prevent use by the latter of the words "Syrup of Figs" or "Fig Syrup," or any colorable imitation thereof, on certain products, alleging its (defendant's) right to exclusive use of such mark. In plaintiff's defense it was alleged and proved that defendant's preparation did not, in fact, include any fig syrup. The case reached the Supreme Court of the United States, and that tribunal in the course of its opinion said (187 U. S. 528, 23 S. Ct. 161, 164, 47 L. Ed. 282): "We find, however, more solidity in the contention, on behalf of the appellants * * *; that where any symbol or label claimed a sa trade-mark is so constructed or worded as to make or contain a distinct assertion which is false, *no property can be claimed on it*, or, in other words, the right to the exclusive use of it cannot be maintained." (Italics ours.) Authorities were then cited.

In Levy v. Uri, 31 App. D. C. 441, the Court of Appeals of the District of Columbia reversed a decision of the Commissioner of Patents and denied registration of the word "Brockwood" as a trade mark for whisky, because it was found that the proposed registrant had, in printed matter accompanying the mark, represented the product to be rye whisky, when as a matter of fact it was a blend, saying (31 App. D. C. 446): "It is our conclusion that, because of the misleading statements on the labels containing the mark, appellee *can claim no property right therein*, and is not entitled to claim the benefits of the trademark act." (Italics ours.)

The distinction between the Levy Case and that at bar is that in the latter it is the mark itself which misleads, and not merely statements accompanying it on the label.

Many authorities bearing upon the issue are cited in this latter decision, and others are Federal Products Co. v. Lewis, 57 App. D. C. 338, 23 F.(2d) 759, 367 O. G. 3; Coffin Redington Co. v. Turner, 46 App. D. C. 449, 1917 C. D. 187, 242 O. G. 751.

The decision of the Commissioner of Patents is affirmed.

Affirmed.