**HOT WAX, INC., Plaintiff,**

v.

**TURTLE WAX, INC. Defendant.**

**No. 97 C 3646.**

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 19, 1998.

Dion Joseph Sartorio, Tribler, Orpett, Palmer & Crone, P.C., Chicago, IL, John Peter Maniatis, Tressler, Soderstrom, Maloney & Priess, Chicago, IL, for Hot Wax, Inc.

J. Patrick Herald, John Christopher Filosa, Philip J. Zadeik, David Jonathan Davis, Patricia O'Brien, Sanjiv D. Sarwate, Baker & McKenzie, Chicago, IL, for Turtle Wax, Inc.

John J. Arado, Craig S. Fochler, Michael Lee McCluggage, Wildman, Harrold, Allen & Dixon, Chicago, IL, Max C. Fischer, Stowell, Friedman & Vernon, Chicago, IL, for Blue Coral, Inc.

Michael J. Abernathy, Margaret A. McGreal, Bell, Boyd & Lloyd, Chicago, IL, for Stone Soap Co., Inc.

Ross A. Anderson, Whyte, Hirschboeck & Dudek, Milwaukee, WI, for Cleaning Systems, Inc.

Timothy M. McCarthy, Jerome G. McSherry & Associates, Chicago, IL, for Warsaw Chemical Company, Inc., defendant.

Matthew Sean Elvin, Ross & Hardies, Chicago, IL, Arthur F. Radke, Hefter & Radke, Chicago, IL, Steven M. Greenspan, J. Michael Amrein, Day, Berry & Howard, Hartford, CT, for Simoniz U.S.A., Inc.

Michael J. Abernathy, Margaret A. McGreal, Bell, Boyd & Lloyd, Chicago, IL, for Grace–Lee Products, Inc.

Edward M. Olson, Michael J Sugameli, Velardo, Sugameli & Olson, P.L.C., Troy, MI, for Cul–Mac Industries, Inc.

Daniel Glen Suber, Jason Reding Schulze, Daniel G. Suber & Associates, Chicago, IL, for S/S Car Care.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Plaintiff Hot Wax sues defendant Turtle Wax for false advertising under § 43(a) of the Lanham Act, 15 U.S.C. § 1125. Hot Wax alleges that Turtle Wax falsely markets and advertises certain products as waxes, when in fact the products do not contain any wax. The parties have submitted cross-motions for summary judgment.

Hot Wax contends that it is entitled to judgment as a matter of law because its experts have determined—and the defendant's expert has admitted—that the products in question do not contain wax. In light of this admission, Hot Wax insists that there is no factual dispute that Turtle Wax's labeling and marketing of these products are literally false. Turtle Wax counters that while these products do not contain "wax" under the chemical definition proffered by Hot Wax, more modern and less scientific

definitions of the term encompass Turtle Wax' products. Moreover, Turtle Wax asserts that the doctrine of laches bars the plaintiff's claim because its twenty-year delay in bringing this action was both unreasonable and prejudicial.

## FACTS

In the late 1960s and early 1970s, the plaintiff successfully marketed its Hot Wax products to carwashes nationwide. These products contained carnauba wax, which provided both polish and protection. However, due to the physical characteristics of wax, Hot Wax encountered significant costs in incorporating wax into their carwash products.

Turtle Wax entered the carwash supply industry in the mid–1970s, in direct competition with Hot Wax. The genesis of this suit arises from five Turtle Wax products—Polish Wax, Sealer Wax, Polyshell Triple Shine, Foaming Sealer Wax, and Poly Sealant. While Turtle Wax marketed these products as waxes, contain neither beeswax nor carnauba wax. Instead, they contain certain mineral seal oils or wax emulsions that are less costly to produce than traditional wax ingredients. Because they were less expensive than the Hot Wax products, Turtle Wax eventually dominated, dramatically reducing Hot Wax's presence in the market. In doing so, Turtle Wax expended significant resources and capital in making their products more convenient to use, ship, and recognize. Turtle Wax built and expanded its car wash business to offer products covering all aspects of the washing process. Turtle Wax is currently recognized as an industry leader.

Ed Holbus, Hot Wax' president, admits that he was aware of the nature of Turtle Wax's products since the mid–1970s. Despite this awareness, Holbus waited until 1993 to even reduce his grievances to writing, and even then only to sporadically complain to Turtle Wax and others that Turtle Wax created a virtual monopoly by producing "cheater waxes." In early 1995, Holbus sent a letter to the Wisconsin Division of Trade and Consumer Protection of the Department of Agriculture, Trade and Consumer Protection [the "Consumer Department"] claiming that Turtle Wax was "misrepresenting their product by calling it 'wax' and was deceiving consumers". The Consumer Department disagreed and, in February 1995, informed Holbus that

> [a]lthough, [sic] the products you listed may not fit the chemical definition of "wax," this term has taken on a new meaning in modern English. According to *Webster's Ninth New Collegiate Dictionary,* "Wax" has come to mean: "A pliable or liquid composition used esp. in uniting surfaces, excluding air, making patterns or impressions, or producing a polished surface." We do not believe it would be possible to hold sellers of car wash products to a strict chemical definition of a word that has come to mean much more in everyday usage.

Holbus filed the instant action on behalf of Hot Wax in 1997, seeking damages and injunctive relief. In support of its claim, Hot Wax relies upon the testimony of several experts. Arthur Keller, a chemist with S.C. Johnson Wax for over thirty years, developed car wash products similar to those at issue. Mr. Keller opined that mineral seal oil, found in the Sealer Wax and Poly Sealant products, is not a wax. Rather, Mr. Keller explained that these products are known in the industry as rinse aids that merely help cars dry faster and temporarily enhance water beading. Similarly, Dr. Stephen Duerr concluded that none of the Turtle Wax products in question contain any natural or synthetic waxes. Dr. Duerr relied upon *Hawley's Condensed Chemical Dictionary,*[1] which defines waxes as

---

1. Both parties rely upon numerous authorities. For example, the plaintiff points to *Petroleum Processing,* which defines waxes as "solids at ordinary temperatures" and distinguishes petroleum distillates such as mineral seal oil from waxes. *Commercial Waxes* similarly distinguishes petroleum distillates from waxes. The defendant directs this Court's attention to *Webster's Third New International Dictionary,* which defines wax as "liquid composition that may or may not contain wax and is used in ... producing a waxlike polished surface." *The Chemistry and Manufacture of Cosmetics,* Mason G. DeNacarre, PHC.2d ed., puts "such liquid material as mineral, whale and jojoba oils into the wax family"

low melting organic mixture[s] or compounds[s] of high molecular weight, **solid at room temperature** and generally similar in composition to fats and oils except that it contains no glycerides. **Some are hydrocarbons,** others are esters of fatty acids and alcohols. . . . Common properties are water repellancy, smooth texture, low toxicity, freedom from objectionable odor and color.

Dr. Duerr notes that none of the ingredients in Turtle Wax's products are solid at room temperature, and thus the ingredients are not waxes.

In response, Turtle Wax argues that Hot Wax's proffered definition of wax is too narrow. Claiming that the lay definition of what a wax is and does encompass their products, Turtle Wax charges that Hot Wax improperly relies upon overly-formalistic, chemical definitions of wax to attack Turtle Wax's products. Turtle Wax notes that when it entered the competitive car wash supply market, the competition used—and continues to use—the term "wax" to identify products that do not contain natural or synthetic waxes. Turtle Wax also introduced customer-survey results indicating that customers get exactly what they expect when they purchase these Turtle Wax products—polish, shine, and protection.

The defendant's expert witness, Professor Carr of Northwestern University, testified that while the Polyshell Triple Shine Products contain neither natural nor synthetic wax, they are applied in conjunction with Sealer Wax. The Sealer Wax and Poly Sealant products contain mineral seal oil—a hydrocarbon that, according to Carr, satisfies even Duerr's limited definition of a wax. In addition, the Polish Wax and Cherry Polish Wax products contain "Intermediate 303", a mixture formed by combining natural carnauba wax and montan wax in order to create a wax "emulsion". Moreover, Dr. Carr's testing reveals that the Turtle Wax products do polish and shine, and offer extended water repellant protection. Because these products repel water and offer both car protection and polish, Carr opines that these products are waxes. *See* Def.'s Rsp. to S.J. at 6 ("the

term wax is properly defined as a substance that cleans, shines and protects").

Hot Wax counters that while some waxes are hydrocarbons, not all hydrocarbons are waxes. Moreover, while waxes clean, shine, and protect, Hot Wax contends that a substance is not wax merely because it accomplishes these goals. Hot Wax also challenges the Turtle Wax products' effectiveness, pointing to Dr. Duerr's testing that demonstrates only limited protection. While the plaintiff attacks Turtle Wax's substantial customer-survey evidence as incomplete, Hot Wax has not submitted its own evidence of customer confusion or dissatisfaction.

## ANALYSIS

### I. Summary Judgment Standards

Summary judgment is proper only when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A genuine issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In ascertaining whether a genuine issue of material fact exists, the court must "view the evidence presented through the prism of the substantive evidentiary burden," "while reviewing all evidence and drawing inferences in the non-movant's favor." *Liberty Lobby,* 477 U.S. at 254, 106 S.Ct. 2505. This Court's sole duty is to determine whether sufficient evidence exists to support a verdict in the non-movant's favor; credibility determinations, weighing evidence, and drawing reasonable inferences are jury functions. *Id.* at 255, 106 S.Ct. 2505.

When parties submit cross-motions for summary judgment, the Court is not required to grant judgment as a matter of law for one side or the other. *Heublein, Inc. v. United States,* 996 F.2d 1455, 1461 (2d Cir. 1993). The Court must evaluate each party's motion on its own merits, resolving factual uncertainties and drawing all reasonable inferences against the party whose motion is

under consideration. *Id.; Buttitta v. City of Chicago,* 803 F.Supp. 213, 217 (N.D.Ill.1992).

## II. False Advertising Under The Lanham Act

Section 43(a)(2) of the Lanham Act prohibits the use of false and misleading statements in commercial advertising. 15 U.S.C. § 1125. An advertiser violates the Act by making 1) statements that are literally false; or 2) statements that are literally true or ambiguous, but convey a false impression as demonstrated by actual consumer confusion. *Abbott Labs. v. Mead Johnson & Co.,* 971 F.2d 6, 13 (7th Cir.1992). Because Hot Wax has not submitted any persuasive evidence on consumer confusion, *see Coors Brewing Co. v. Anheuser–Busch Companies,* 802 F.Supp. 965, 969 (S.D.N.Y.1992) ("the plaintiff must submit consumer surveys showing that the challenged advertising claim tends to mislead or deceive consumers."), its claim hinges upon whether Turtle Wax's statements are literally false.

Hot Wax contends that the Seventh Circuit's decision in *Abbott v. Mead,* 971 F.2d 6 (7th Cir.1992), controls the disposition of this case. Although *Abbott* provides the proper analytical framework, we disagree that the holding is dispositive of the issue in this case as Hot Wax has not decisively satisfied that standard. In *Abbott,* the Seventh Circuit determined that a producers' use of the label "Ricelyte" violated the Lanham Act because it falsely advertised that it contained rice. The court found that while the producers started with rice, they proceeded to remove the rice syrup and valuable carbohydrates typically associated with rice-based products. *Id.* at 13. As such, "Mead cannot truthfully characterize Ricelyte as a 'rice-based solution' or claim that Ricelyte has the inherent health benefits thereof. . . . [I]t contains rice syrup solids, which are a completely different animal than, and yield few if any of the [health] benefits of non-hydrolyzed rice carbohydrates." *Id.* Because the court found that Ricelyte falsely represented that it had certain qualities that were material to a consumer's decision to purchase the product, it upheld the trial court's finding for the plaintiff. *Id.* at 14.

In the case at bar, however, neither party has provided conclusive evidence that Turtle Wax's products—while not meeting the chemical definition of a wax—falsely represent that they have certain qualities that are material to a consumer's decision to purchase the product. The parties have presented conflicting testimony and data regarding the effectiveness of Turtle Wax's products, the car wash industry's and consumer's understanding of the term "wax", as well as the appropriate definition of the term wax.

More importantly, the *Ricelyte* Court found that the question of whether the rice claims were literally false was a question of fact. *Abbott,* 971 F.2d at 13. In the instant case, we are presented with conflicting expert testimony regarding the acceptable definition of wax, and competing evidence as to industry standards. *See Grismer v. The Upjohn Co.,* 1995 WL 390053, at *4 (N.D.Ill. June 26, 1995) (denying summary judgment where the "battle of the experts" created a genuine issue of material fact). In light of the conflicting testimony, and because we must draw all inferences against the moving party, we find that the disposition of this issue is properly left to the trier of fact. Because the parties have submitted sufficient evidence to defeat their opponents motion for summary judgment, we must deny both motions to the extent that they seek a dispositive ruling on the merits of this case.

## III. The Doctrine of Laches

This is not the end of our inquiry, as Turtle Wax further contends that the doctrine of laches bars Hot Wax's claim. Laches bars enforcement of a plaintiff's rights when that party has unreasonably delayed their assertion so as to cause prejudice to the opposing party. *Anderson v. Board of Regents of the Univ. of Wisconsin Sys.,* 140 F.3d 704 (7th Cir.1998). At a minimum, Turtle Wax must establish that 1) Hot Wax knew or should have known about the nature of Turtle Wax's products and alleged misrepresentation 2) Hot Wax unreasonably failed to take prompt action; and 3) allowing Hot Wax to pursue its claim at this time would prejudice Turtle Wax. *See Pucci,* 1987 WL 9002, 2 U.S.P.Q.2d 1958, 1960 (N.D.Ill.1987).

Courts have consistently recognized that "[e]ven if the elements of laches are established, however, a court need not bar a plaintiff's suit. The application of the laches defense is discretionary, and as an equitable matter, the district court is to look to all the facts and circumstances of the case and weigh the equities of the parties." *Gossen Corp. v. Marley Mouldings, Inc.*, 977 F.Supp. 1346, 1350 (W.D.Wis.1997), *citing A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020, 1032 (Fed.Cir. 1992) (en banc) ("[w]here there is evidence of other factors which would make it inequitable to recognize the defense despite undue delay and prejudice, the defense may be denied.").

## A. Turtle Wax has submitted compelling evidence of unreasonable delay and prejudice.

■ The evidence shows that since the mid–1960s, Ed Holbus was aware that his competitors were marketing non-carnauba wax products as waxes.[2] In addition, Holbus admits that as early as the mid–1970s, he believed that Turtle Wax misrepresented the character and quality of its products. Despite this knowledge, Holbus and Hot Wax made no effort to remark upon these alleged misrepresentations until 1993. In 1993, Holbus began a one-man letter writing campaign, complaining to Turtle Wax, various newspapers, and even the Wisconsin Consumer Department about Turtle Wax's alleged false advertising. Hot Wax finally filed suit against Turtle Wax in 1997, but offers no explanation as to why it did not bring this action sooner. We find that Hot Wax's twenty-year delay is unreasonable as a matter of law. *See Lingenfelter v. Keystone Consolidated Indus.*, 691 F.2d 339, 340 (7th Cir.1982) (unexplained nine-year delay in bringing suit satisfies delay element of laches defense); *Conopco Inc. v. Campbell Soup Co.*, 95 F.3d 187 (2nd Cir.1996) (finding plaintiff's five-year delay in filing its false advertising suit was an unreasonable delay); *Pucci v. Pucci Corp.*, 1987 WL 9002, 2 U.S.P.Q.2d 1958 (N.D.Ill.1987) (counterclaim for injunc-

tive relief and damages barred by fifteen-year delay).

■ Next, we find that Turtle Wax would be prejudiced if we allowed Hot Wax to continue pressing its suit. In *Conopco*, the Second Circuit found that the doctrine of laches barred the producers of Ragu pasta sauces from pursuing a false advertising claim against the makers of Prego pasta sauces. 95 F.3d at 192. The Ragu makers waited five years before challenging Prego's commercials that heralded Prego's sauce as thicker than Ragu's. The court recognized that "[had plaintiff] brought this action in a more timely manner, [defendant] might well have chosen some alternative position which it believed to best promote its chosen image." *Id.* at 193. Instead, the plaintiff's delay "precluded the possibility that [defendant] could effectively adopt an alternative marketing position," such as, by marketing itself as the "natural", "healthy", or the "home style" sauce. *Id.* at 192–93. Thus, allowing the defendant to sue at that late date would have prejudiced the defendant. *Id.*

We find that Hot Wax's delay similarly prejudiced Turtle Wax. Since entering the market, Turtle Wax has invested substantial funds in promoting its products as waxes. In doing so, Turtle Wax obtained its current position as a market leader. Had Hot Wax challenged Turtle Wax's representations in a timely manner and prevailed, Turtle Wax may have promoted its products as less costly but more effective alternatives to natural wax products. Forcing Turtle Wax to abandon its image and name now, after decades of unchallenged promotion and expansion, would result in a substantial prejudice. *See Polaroid Corp v. Polarad Electronics Corp.*, 287 F.2d 492, 498 (2nd Cir.1961) ("it cannot be equitable for a well-informed merchant with knowledge of a claimed invasion of rights, to wait to see how successful his competitor will be then destroy with the aid of court decree, much that the competitor has striven for and accomplished.").

**2.** In an affidavit in support of his 1965 patent application, Holbus referred to Prestone Jet Wax, differentiating his product on the grounds that, unlike Prestone, his product contained natural wax ingredients.

# 1050

## B. Hot Wax's Attempts to Defeat Laches Are Without Merit

■ Hot Wax insists, however, that even if Turtle Wax has established unreasonable delay and prejudice, we should refrain from applying laches. Specifically, Hot Wax argues laches should not apply because 1) the statute of limitations has not run; 2) a claim for damages under the Lanham Act is more akin to a claim at law for damages, and thus laches, an equitable defense, should not apply; 3) Turtle Wax has unclean hands; and 4) laches is not a proper subject for summary judgment in Lanham Act false advertising cases.

Initially, we find meritless Hot Wax's claim that because the statute of limitations has not yet run, laches cannot apply.[3] We acknowledge that because the continuous use of false and misleading statements constitutes an ongoing violation of the Lanham Act in the Seventh Circuit, the statute of limitations has not run on Hot Wax's claim. *See Taylor v. Meirick*, 712 F.2d 1112 (7th Cir.1983) (a plaintiff may recover for all copyright damages as long as the last act occurred within the statute of limitations period); *Minuteman Int'l v. Critical–Vac Filtration Corp.*, 1997 WL 370204, at * 10 (N.D.Ill. June 27, 1997). Such a finding is relevant to the laches question, however, only because when the statute of limitations has not yet run on a plaintiff's claim, the defendant bears the burden of demonstrating that laches should apply.[4] *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 192 (2nd Cir.1996) (where statute of limitations has not yet expired, the defendant must demonstrate that plaintiff's delay in challenging defendant's advertising campaign warranted laches).

Hot Wax's reliance upon cases such as *Ashley v. Boyle's Famous Corned Beef Co.*, 66 F.3d 164 (8th Cir.1995) and *Ivani Contracting Corp. v. City of New York*, 103 F.3d 257, 260–62 (2nd Cir.1997) is misplaced. The delays involved in *Ashley* (two years on some claims, three years on others) and *Ivani* (one year) are hardly analogous to the extreme twenty-year delay in the instant case. Moreover, *Ashley* merely stands for the proposition that laches cannot bar an employee's gender discrimination action where her Equal Employment Opportunity Commission charge was within Title VII's 300–day limit and her subsequent lawsuit was filed with the Equal Pay Act's statute of limitations. 66 F.3d at 168. The *Ashley* court further noted that laches could not apply to bar the plaintiff's claim because the statute contained an *express* statute of limitation. *Id.* at 170 (citing separation of powers' concerns in applying laches to claim still viable under an express statute of limitations). Conversely the Lanham Act does not have an express statute of limitations, but borrows the most analogous state law limitations period. *See id.*, at 170 n. 4. ("separation of powers principles are less affected by a judicial decision to superimpose the doctrine of laches on the borrowed state statute of limitations.")

While the Second Circuit's decision in *Ivani* limits the applicability of laches in § 1983 actions, there is no authority similarly limiting laches in Lanham Act cases. To the contrary, when the Second Circuit was confronted with a case under the Lanham Act, as opposed to § 1983, it freely applied laches to bar the plaintiff's false advertising claim—a claim that was not barred by the statute of limitations. *See Conopco*, 95 F.3d 187. As such, we reject Hot Wax's "statute of limita-

---

3. The instant case aptly demonstrates the absurdity of accepting such an argument. Here, Hot Wax's claim is not barred by the statute of limitations only because the Seventh Circuit recognizes the doctrine of continuous wrongs. Under Hot Wax's theory, if Turtle Wax continues its current advertising campaign for the next 100 years, Hot Wax could bring suit in the year 2098 and not be barred by laches.

4. Recent developments in the Federal Circuit indicate that the proper inquiry for determining who shoulders the laches burden of persuasion turns upon when the plaintiff had knowledge of

the offending conduct. As such, an argument could be made that the burden should shift to the plaintiff where the plaintiff had knowledge of the defendant's offending conduct for more than six years—not simply when the statute of limitations has run. *See Wanlass v. General Electric Co.*, 148 F.3d 1334 (Fed.Cir.1998); *Wanlass v. Fedders Corp.*, 145 F.3d 1461 (Fed.Cir.1998) We need not determine whether to further this trend by shifting the burden to Hot Wax, as we find laches would apply regardless of whether plaintiff or defendant shouldered the burden of persuasion.

tions" defense. *See generally Martin v. Consultants & Administrators, Inc.* 966 F.2d 1078, 1100 (7th Cir.1992) (Chief Judge Posner stating that "there is plenty of authority for applying laches in cases governed by a statute of limitations", particularly in equitable and quasi-equitable type suits.).

■ Hot Wax's second and fourth arguments essentially boil down to its contention that granting summary judgment on the basis of laches is always inappropriate in a Lanham Act suit. We disagree, finding that numerous courts have granted summary judgment in Lanham Act cases on the basis of laches. *See, e.g., Conopco,* 95 F.3d at 192; *Margo v. Weiss,* 1998 WL 2558, 46 U.S.P.Q.2d 1066 (S.D.N.Y.1998); *New York Association, Inc. v. Perlmutter Publishing, Inc.,* 1996 WL 465298 (N.D.N.Y.1996); *Stanfield v. Osborne Industries, Inc.,* 839 F.Supp. 1499, 30 U.S.P.Q.2d 1842 (D.Kan.1993).

We are similarly unpersuaded by Hot Wax's third claim—that Turtle Wax's unclean hands prevent it from relying upon laches. Hot Wax alleges that Turtle Wax's false advertising constituted an ongoing fraud against both competitors and consumers. Hot Wax argues, therefore, that Turtle Wax has unclean hands and should be denied the equitable defense of laches.

■ A laches defense is unavailable where the party seeking to raise the defense has unclean hands. *Tri–Star Pictures, Inc. v. Unger,* 1998 WL 390458, at *22 (S.D.N.Y. July 13, 1998) (intentional infringement deprives defendant of equitable laches defense). Since the turn of the century, the United States Supreme Court has recognized that laches is not "available in a case of actual fraud," *La Republique Francaise v. Saratoga Vichy Spring Co.,* 191 U.S. 427, 439, 24 S.Ct. 145, 48 L.Ed. 247 (1903), and that "in a case of an active and continuing fraud ..., we should be satisfied with no evidence of laches that did not amount to proof of assent or acquiescence." *Saxlehner v. Eisner & Mendelson Co.,* 179 U.S. 19, 33, 21 S.Ct. 7, 45 L.Ed. 60 (1900). More recently, the Federal Circuit has ruled that a patent holder may overcome laches where the defendant has engaged in particularly egregious conduct, such as conscious copying, which significantly

tips the equities in the plaintiff's favor. *Aukerman,* 960 F.2d at 1033.

Hot Wax asserts that unclean hands can be the result of less willful fraudulent activity, citing the United States Supreme Court's ruling in *Clinton E. Worden & Co. v. California Fig Syrup Co.,* 187 U.S. 516, 23 S.Ct. 161, 47 L.Ed. 282 (1903) (finding that because the defendant's medicinal product did not actually contain figs as indicated by the product name, defendant's unclean hands deprived it of an equitable remedy). Hot Wax fails to point out, however, that the Supreme Court seriously limited the viability of *Worden* in *Coca–Cola v. Koke Co. of Am.,* 254 U.S. 143, 41 S.Ct. 113, 65 L.Ed. 189 (1920).

The Supreme Court granted certiorari in *Coca–Cola* solely to determine whether "the trade-mark itself and the advertisements accompanying it made such fraudulent representations to the public that the plaintiff had lost its claim to any help from the Court." *Id.* at 145, 41 S.Ct. 113. The defendant had successfully argued to the Circuit Court of Appeals that the plaintiff's use of the name Coca–Cola and its advertisement of the product as an "ideal nerve tonic and stimulant" was fraudulent because the plaintiff no longer used cocaine in formulating its drink. *Citing Clinton E. Worden & Co. v. California Fig Syrup Co.,* 187 U.S. 516, 528, 23 S.Ct. 161, 47 L.Ed. 282 (1903). The Supreme Court initially noted that the allegedly offending product was a beverage and not medication, like the California Fig Syrup. In reversing the appellate court, the Court explained that "although what has been said might suggest that [Coca–Cola's] attraction lay in producing the expectation of a toxic effect the facts point to a different conclusion." *Coca–Cola,* 254 U.S. at 146, 41 S.Ct. 113. The Court noted that Coca–Cola had become widely recognizable, and that "it hardly would not be too much to say that the drink characterizes the name as much as the name the drink. In other words 'Coca–Cola' probably means to most persons the plaintiff's familiar product to be had everywhere rather than a compound of particular substances." *Id.* Moreover, while Coca–Cola retained the coco beans and leaf on its advertisement, it also informed consumers that it

no longer used cocaine in the product's formulation. Therefore, the Court rejected the defendant's claim that the plaintiff had unclean hands and was not entitled to equitable relief.

We acknowledge that the *Coca–Cola* case is readily distinguishable from the case at bar: unlike the *Coca–Cola* plaintiffs, Turtle Wax has never informed consumers that its products do not contain any ingredients satisfying the chemical definition of wax. We do not think that this distinction, however, is fatal to Turtle Wax's laches claim. The doctrine of laches is not to be rigidly applied, but rather it is to be utilized by the Court in its discretion and in light of all the facts. We find that in light of all of the facts, the nature of Turtle Wax's products and their intended purpose, the extensive delay involved, and the absence of any evidence of bad faith, laches is warranted. *See Saratoga Vichy Spring Co.,* 625 F.2d at 1042 (finding no bad faith where evidence did not support conclusion that defendant acted with "conscious fraud").

The evidence demonstrates that through its expansion and advertising efforts, the Turtle Wax products have become well known, inducing consumers to purchase its products by virtue of its reputation. Turtle Wax's customer survey's show that consumers are receiving exactly what they expect when they purchase Turtle Wax products—polish and protection. In refuting Hot Wax's allegations of intent to deceive, Turtle Wax has introduced evidence that their market competitors have consistently used the term "wax" to refer to products that do not contain any ingredients meeting the chemical definition of wax. Turtle Wax also has submitted a letter from the Wisconsin Consumer Department explaining that they "do not believe it would be possible to hold sellers of car wash products to a strict chemical definition of a word that has come to mean much more in everyday usage." While this finding is not dispositive, it is evidence of industry and consumer expectations—evidence that Hot Wax fails to rebut.

Hot Wax's allegations of fraud are unsupported by the record. Hot Wax has not produced any evidence that consumers pur-chase the Turtle Wax products because they were led to believe these products contain ingredients that meet the chemical definition of a wax. Nor has Hot Wax introduce studies or surveys refuting Turtle Wax's customer satisfaction surveys. The only evidence that Hot Wax has submitted establishes that Turtle Wax's products do not contain ingredients that meet the chemical definition of wax. We find that this evidence is insufficient to establish unclean hands warranting denial of an equitable remedy.

In short, this Court has not come across a case more deserving of laches than the instant action. It was inexcusable for Hot Wax and Holbus to brood over their concerns for more than twenty years while Turtle Wax battled for market position. Perhaps the plaintiff was waiting in the hope that consumers would reject Turtle Wax's products as inferior. But consumers did not reject Turtle Wax products—to the contrary, Turtle Wax products currently dominate and define the market. While Hot Wax's claims may have raised thought provoking, even actionable issues years ago, its two decade delay in pursuing these claims has rendered them untenable. For these reasons, we find that laches bars the plaintiff's false advertising claims.

This brings us to plaintiff's final contention—that while laches may bar an award for damages, its claim for injunctive relief is still viable. It is generally understood that while laches precludes an award for past damages, the related doctrine of equitable estoppel bars all relief. *See Aukerman,* 693 F.2d at 701; *Gossen Corp. v. Marley Mouldings, Inc.,* 977 F.Supp. 1346 (E.D.Wis.1997). While laches has been referred to as passive acquiescence, equitable estoppel requires active acquiescence—some misleading conduct on the part of the plaintiff. *Aukerman,* 693 F.2d at 701. To establish equitable estoppel, Turtle Wax must demonstrate that 1) Hot Wax misled Turtle Wax, through its words, conduct, or silence, that it would not pursue a claim against Turtle Wax; 2) Turtle Wax relied upon this communication; and 3) Turtle Wax would be materially harmed if Hot Wax was granted

an injunction.' *Gossen,* 977 F.Supp. at 1353 (noting that silence may constitute misleading conduct only when "combined with other facts respecting the relationship or contacts between the parties to give rise to the necessary inference that the claim against the defendant is abandoned."). However, Turtle Wax has not attempted to do so.

Instead, Turtle Wax notes in its brief that courts have barred all forms of relief—both injunctive and damages—in the case of egregious delays. For example, in *Conopco, Inc. v. Campbell Soup Co.,* 95 F.3d 187 (2nd Cir.1996), the Second Circuit affirmed the trial court's decision to deny the plaintiff's request for an injunction, even though the defendant had demonstrated only laches, not equitable estoppel. The court determined that an injunction would be unduly prejudicial in light of plaintiff's five year delay.

Similarly, the Seventh Circuit has acknowledged that while the "mere delay in bringing suit ordinarily does not affect the right to an injunction against further use of an infringed trademark.... However, in many instances, the delay may be so prolonged and inexcusable that it would be inequitable to permit the plaintiff to seek injunctive relief as to future activities." *Seven–Up Co. v. O–So–Grape Co.,* 283 F.2d 103, 106 (7th Cir.1960)[5]; *see also Pucci v. Pucci Corp.,* 1987 WL 9002, 2 U.S.P.Q.2d 1958 (N.D.Ill.1987) (stating that once laches is established, the court can decide what relief is barred by laches based upon all of the circumstances.).

The extreme circumstances presented here dictate that Hot Wax's request for equitable injunctive relief be denied. Its delay in bringing this action was "so prolonged and inexcusable," that awarding Hot Wax's claim for an injunction would be inequitable.

## CONCLUSION

Hot Wax brings this suit alleging that Turtle Wax falsely advertised certain products as containing wax. Turtle Wax responds that its products do constitute waxes under modern definitions accepted within the industry. We need not resolve this dispute, however, as the doctrine of laches bars Hot Wax's pursuit of all requested relief. Therefore, the plaintiff's motion for summary judgment is denied, and defendant's motion for summary judgment is granted. The Clerk of the Court is directed to enter judgment pursuant to Fed.R.Civ.P. 58, in favor of Turtle Wax and against Hot Wax.

5. We note that courts have consistently employed a higher standard when reviewing the availability of injunctive relief in the case of deliberate infringement. *See, e.g., Tisch Hotels, Inc. v. Americana Inn, Inc.,* 350 F.2d 609 (7th Cir.1965). The instant case does not involve deliberate infringement and in the absence of any evidence that Turtle Wax intended to deceive the public, we find that these cases are distinguishable.